IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TEXMARK CHEMICALS, INC., § <br> PLAINTIFF § <br> V. § <br>  § <br> AMSPEC, LLC A/K/A AMSPEC § <br> SERVICES, INC. OR AMSPEC § <br> SERVICES, LLC AND KM TERMINALS § <br> LLC A/K/A KINDER MORGAN GALENA § <br> PARK WEST, LLC § <br>  § <br> DEFENDANT § | C. A. NO. _____ <br> **JURY DEMAND** |

## **COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Texmark Chemicals, Inc. (also called Texmark"), Plaintiff in the above-entitled and numbered cause, complaining of Amspec, LLC, also known as Amspec Services, Inc., or Amspec Services, LLC, also called "Amspec," and KM Terminals, LLC a/k/a Kinder Morgan Galena Park West, LLC, ("KM Terminals"), or collectively "Defendants," herein, and in support would show the Court as follows:

**I.**

1. Plaintiff, is a Texas corporation or similar entity, headquartered in Houston, which was the shipper or consignee of the cargo in question and brings this action on its own behalf, and on behalf of, and for, the interests of all parties who may be or become interested in the goods in question ("toluene").

**II.**

2. Defendant, Amspec, LLC, also known as Amspec Services, Inc. or Amspec Services, LLC ("Amspec"), was and now is a corporation or similar entity, headquartered in New Jersey, with offices in Texas and Louisiana, with the power to sue and be sued, which regularly does

business in Texas, and/or the United States, as a petroleum commodity surveyor and inspector of goods, which is headquartered in Cranbury, New Jersey with a certificate of authority to do business in Texas, and which maintains a designated agent on whom service may be made, and thus may be served, in care of its Texas Registered Agent: Corporation Service Co. (CSC) – Lawyers Service Company, 211 E. 7th Street, Suite 620 Austin, Texas78701, or through its Vice President, Michelle Moffitt-Johnson, 37294 Clapp Rd., Pattison, TX 7742.

### III.

3. Defendant, KM Liquids Terminals, LLC, also known as Kinder Morgan Kinder Morgan Galena Park West LC ("KM Terminals"), was and now is a Delaware corporation or similar entity, headquartered at 1001 Louisiana Street, Houston, TX 77002, with the power to sue and be sued, which regularly does business in Texas, and/or the United States, as a petroleum storage, handling and transportation services provider, with a certificate of authority to do business in Texas, and which maintains a designated agent on whom service may be made, and thus may be served, in care of its Texas Registered Agent: Capitol Corporate Services Inc., 1501 MOPAC Expy, Suite 220, Austin, TX 78746, or through its Vice President, Meli Armstrong, Kinder Morgan, at 1001 Louisiana St., Suite 1000, Houston, TX 77002.

### III.
### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under Admiralty and Maritime Jurisdiction, 28 USC Sec. 1333, as the activities herein occurred during discharge of an ocean-going vessel, the M/V Stolt Bismuth at the Port of Houston.

5. Venue is proper in the Southern District of Texas, because the service contract, between the parties, Texmark and KM Terminals, calls for jurisdiction in Houston, Harris County, Texas, State or Federal court and the activities complained of herein occurred at the Port of Houston.

## IV.
## GENERAL

6. Whenever Plaintiff alleges that Defendant did any act or thing, it is meant that Defendant's officers, agents, servants, employees or representatives, did such act or thing, and that at the time such act, or thing, was done with the full authorization or ratification of the Defendant, or done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

## V.
## FACTS AND FIRST CAUSES OF ACTION

7. On or before August 8, 2021, Texmark, as a chemical importer, exporter, and marketer, contracted with KM Terminals to properly discharge ocean going vessels, safely transmit imported chemicals to designated shore tanks, and store them safely until sold or further transmitted.

8. Texmark also employed Amspec to handle quality control services including sampling, gauging and transmission supervision of the chemicals being stored at KM Terminals. Amspec, acting as a petroleum commodity surveyor and inspector, entered a contract with TEXMARK for quality inspection and quality certification of various Texmark ship-tank quantities of petroleum goods, including toluene, delivered to an ocean-going vessel named the M/T Stolt Bismuth at KM Terminal in Louisiana.

9. On or about August 8, 2021, Amspec inspected Texmark's assigned toluene tank at KM Terminals in Galena Park, Texas, before the cargo of toluene was to be discharged from the M/T Stolt Bismuth to the KM Terminal. Amspec determined that the quality of the residual toluene in that tank was of good quality prior to discharge of the vessel's toluene to the shore tank. In accordance with the industry practice, Amspec was to conduct "foot-sample" sampling and testing of the toluene as it was entering the cargo tanks of the vessel, M/V Stolt Bismuth, from the storage tanks of KM Terminal in Galena Park, Texas.

10. "Foot-sample" testing is a normal procedure by which surveyors determine the cleanliness of the vessel's tanks, and the ship's product tom be delivered, before the balance of the consignment of cargo was to be transmitted to the shore tanks from the vessel's tanks. Amspec was assigned the duty of confirming "good order and condition" of the first foot of cargo to be delivered from the M/T Stolt Bismuth to KM Terminal's toluene tanks before the lion's share of the consignment of Toluene (hereafter also called "goods"), was delivered from the M/T Stolt Bismuth's cargo tanks to the shore tanks at KM Terminal's Galena Park, Texas facility.

11. The "foot sampling" is designed to identify the condition and quality of the toluene as it is initially delivered from the ship to the KM Terminal piping system and into the KM Terminal shore tanks. During the "foot-sampling" procedure, a small parcel, of the larger quantity to be aboard the ship, is loaded into the shorelines (and sampled) to identifying any wrong cargo issues, cleaning errors or other systematic contaminants which might have accumulated in the transmission system or the vessel's tanks.

12. As part of their contractual responsibility, KM Terminals' dock men were assigned to meet with the ship's crew, designate the proper hose assigned to the correct KM Terminals tank, and coordinate the attachment of the correct KM Terminal hose to the correct ship's manifold to

assure proper discharge from the proper vessel tank. KM Terminals had the responsibility of determining the proper order of discharge of the several different parcels to be delivered and insure that the correct shore hose was affixed to the correct vessel tank manifold.

13. In this case, the KM Terminals dock man, in dereliction of his duties and in commission of an error amounting to gross negligence, incorrectly identified the hose associated with the correct destination tank inside KM Terminals and vessel's manifold was hooked up improperly to the vessel's manifold by KM Terminals. The destination hose hooked up by KM Terminals dock man transmitted the Texmark toluene into a DCPD tank operated by another customer of the KM Terminals. KM Terminals' negligence and dereliction of their industry standard duties caused two incompatible chemicals, toluene and DCPD to be irreversibly admixed in the DCPD tank, destroying the pristine quality of each chemical and adversely affecting the value of each pure product.

14. Further, Amspec, who was made aware of the transmission sequence, manifold designations, and line identification for both ship and shore, was charged with the duty of quality control and propriety of transmission line alignment during the discharge from ship-to-shore. In dereliction of his duties, the Amspec surveyor failed to timely withdraw and analyze or significantly minimized, if foot samples or line samples had been timely obtained before the full-rate discharge transmission of the toluene was commenced.

15. Indeed, the Amspec surveyors' dilatory efforts to obtain foot samples or discharge line samples was delayed until approximately 15 minutes into the transmission process, causing a contamination that would have been avoided entirely, if Amspec had fulfilled his industry standard duties. Instead, toluene proceeded to be discharged for approximately 15 minutes into the incorrect DCPD shore tank causing the damages complained of herein.

16. Amspec failed to complete its assigned tasks in a timely fashion causing, or contributing to the damages to both chemicals, toluene and DCPD. Amspec's negligent failure to identify the contamination within the foot sample, and and/or their failure to accurately and timely report this contaminated condition to Texmark or alert them to contamination occurring within the KM terminal's tanks resulted in a large parcel of toluene and DCPD to be improvidently mixed and damaged.

17. On August 8, 2021, Amspec failed to properly accomplish the "foot sampling" for the Texmark delivery of toluene to the KM Terminal from the vessel causing 93,652 gallons of products to be improvidently mixed and rendered unsaleable for the originally intended purpose.

18. Together the negligence and dereliction of duty of KM Terminals and Amspec, jointly and severally, caused the contamination of 93,5652 gallons of chemicals owned by Texmark.

19. Texmark was entitled to rely upon the "holding out" of Amspec and KM Terminals, who advertise themselves to be competent and qualified petroleum inspectors and transmission providers, knowledgeable of the practices and standards of the petroleum industry involving ship loadings and discharges.

20. As a result of KM Terminals' and Amspec's violation of industry standards and their contractual breach, these goods, (which were to be delivered in good order and condition from the vessel M/T Stolt Bismuth to the KM Terminal refinery at Galena Park, Texas), were delivered contaminated at the KM Terminal and eventually rejected. These goods were to be delivered, at Texmark's instruction, in the same quantity and in the same good order condition as they were received aboard the ship at the docks of the KM Terminal but were instead delivered damaged and contaminated at the DCPD tanks in KM Terminal.

21.     Defendant, Amspec, acting as a petroleum commodity surveyor and inspector, undertook quality inspection and quality certification responsibilities under instruction of Texmark. However, Amspec did not timely and accurately identify and report the incorrect line transmission of the goods (which foot sampling would have prevented) and caused the goods were delivered in a contaminated and damaged fashion.

22.     The goods were delivered contaminated on August 8, 2021, as a result of KM Terminal's incorrect identification of the proper delivery line and Amspec's negligent inspection and reporting. The contaminated delivery of the goods was caused due to the negligence and breach of contract of Amspec and KM Terminals jointly and severally.  The monetary loss incurred by Plaintiff's as a result of the improvident inspection and delivery of the toluene in question was $355,507.99, for which Plaintiff demands recovery from Defendants jointly and severally.

## VI.
## AMSPEC BREACH OF CONTRACT AND RELATED NEGLIGENCE

23.     Defendant Amspec undertook duties as an entity which would:

  1.     Provide an accurate quality inspection certification of the foot samples and prior to the delivery of the goods inspected by them,

  2.     Institute certain procedures and utilize certain equipment which would be designed to prevent delivery in poor quality,

  3.     Employ knowledgeable and properly trained personnel and instruct its employees (or subcontractors) in the correct procedures to prevent improper inspection and reporting.

4. utilize procedures which prevent discharge of cargoes until proper foot sampling is investigated.

24. The goods were improperly and negligently inspected (inconsistent with contractual requirements) and untimely inspections (foot sampling) was accomplished, and late reports were transmitted to the plaintiff and/or the vessel's crew, for confirmation of foot sample quality. Damages were then incurred because of Amspec's improper procedures and untimely testing and reporting.

25. Amspec breached their contract with Texmark, and was negligent in instruction of its own personnel, and the instruction of others whom they employed to assist Amspec in the inspection and reporting. Amspec was also breached their contract with Texmark, and was negligent in their quality inspection and certification, reporting, and/or reporting of the condition and quality of the foot sample of Toluene resulting in delivery of a parcel of toluene in the incorrect storage tanks at KM Terminals.

26. Defendant Amspec breached their contract with Texmark and these acts and/or omissions constituted a breach of the duties of care owed by Defendant, Amspec, acting as a petroleum commodity surveyor and inspectors, to Plaintiff, and/or proximately caused the improper delivery and "poor quality" delivery to KM Terminals of the Toluene from the transit aboard the M/T Stolt Bismuth, resulting in the damages enumerated herein.

**VII.
KM TERMNALS' CONTRACT BREACH AND RELATED NEGLIGENCE**

27. In the alternative, and without waiving the above causes of action, Defendant, KM Terminals, acting as a terminal entity owed Texamark a duty to correctly identify the lines they attached to the M/V Stolt Bismuth and to follow Coast Guard regulations regarding holding the key meeting a providing properly trained and knowledgeable employees to attend a present correct information to the vessel's agents, and crew. By failing to properly identity and line-up the terminal hose to the correct ship's manifold KM Terminals breached their contract with Texmark, causing damages stated herein.

28. KM Terminals agreed to: 1) provide proper qualified personnel to present correct information to the "persons in charge" from the M/T Stolt Bismuth's personnel, 2) properly pass along information from a personnel shift changes, 3) provide for stoppage in discharge to permit line sampling to insure correct line-ups of terminal hoses and vessel manifolds, 4) provide for facilities to allow for line sampling and testing to prevent incorrect line-up of vessel and terminal hoses, and cause improper discharges, and/or 5) properly communicate with the Amspec inspector to insure that Amspec might provide proper sampling, testing and reporting of the quality of Plaintiff's goods (particularly at the foot sample stage).

29. Defendant KM Terminals is also liable for improper and unprofessional instruction of its employees, inconsistent with the standard of care in the petroleum inspection industry, and/or improper entrustment of the inspection and reporting of goods to third-parties, to whom they may have entrusted control over Plaintiff's toluene unloading from aboard the ocean-going vessel named the M/T Stolt Bismuth. Defendant KM Terminals failed to properly inspect and insure proper line-up of the ship to shorelines. Defendant KM Terminals thus breached their terminalling contract with Texmark and have violated their duties and obligations as terminal

operators and discharge service providers, which activities proximately caused the Toluene to be contaminated and damaged as asserted wherein.

## VIII.
## VIOLATION OF DUTY UNDER STANDARD OF CARE

30. Defendants, acting as a maritime discharge service providers had a duty to: 1) provide proper line-up of the hoses within the terminal facility, 2) provide proper information to ship "persons in charge" at the US Coast Guard Key meeting before discharge commenced, 3) prevent improper discharge into the wrong , 4) timely inspect and report the qualities of goods to Plaintiff and/or the vessel's crew before authorizing discharge of the goods in question, 5) utilize procedures which should be designed to prevent improper discharges into the wrong tanks, 6) employ properly trained personnel and properly instruct its employees in procedures to prevent improper testing and/or reporting, and/or 7) prevent any other potential activity which a petroleum service providers knew, or should have known, might permit improper line-up and discharge of ship delivered goods.

31. As maritime discharge petroleum service providers the defendants failed to exercise the requisite care in properly identifying tanks and goods and their supply lines, failed to timely provide for industry standard line or foot sampling services, failed to properly inspect the shore tanks or goods to insure proper reporting of the goods and terminal tanks and lines, and the failure to timely report the results of their inspections, failed to properly instruct others. Defendants thus breached their duties as a Maritime petroleum delivery service providers, which breach proximately caused the contamination of, and damage to, the goods in question, which would not have otherwise occurred.

## IX.

## AD DAMNUM CLAUSE AND CLAIM FOR ATTORNEY'S FEES

32. As a direct result of the activities above, Plaintiff suffered losses in the amount of $355,507.99, as same can now be estimated. Plaintiff retained the undersigned attorneys to present their claims to Defendant, and their claims have been presented to Defendant. However, the claims have not been paid, although duly demanded. Therefore, pursuant to Chapter 38 of the Tex. Civ. Prac. & Rem. Code Ann., and the pertinent contract between TEXMARK and Amspec, and /or Texmark and KM Terminals. Plaintiff further seeks reasonable attorney's fees in the amount of $200,000.00. Plaintiff further seeks all reasonable attorney's fees incurred in any future appeals.

## X.
## CONDITIONS PRECEDENT SATISFIED

33. Plaintiff has performed all conditions precedent necessary to allow recovery.

## XI.
## JURY DEMAND

34. Plaintiff requests trial by jury.

35. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court issue a summons to Defendants Amspec, LLC, and KM terminals LLC, requiring them to appear, and that this Court award judgment to Plaintiff and against Defendant, including damages of $355,507.99, reasonable attorney's fees of $200,000.00, pre-judgment interest, post-judgment interest, costs of the court, all reasonable attorney's fees incurred in any future appeals, and such other and further relief to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

*/S/ Dana K. Martin*

_____
DANA K. MARTIN
SDTX I.D. No.: 126
Texas Bar No.: 13057830
HILL RIVKINS LLP
1,000 N. Post Oak Rd., Suite 220
Houston, Texas 77055
Telephone: (713) 446-9311
Telefax: (713) 222-1359
Email: dmartin@hillrivkins.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF TEXMARK CHEMICALS, INC.**